ᴏᴏᴜ



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable J. P. Holubec
County Auditor
Lavaca County
Hallettsville, Texas

Dear Sir:

Opinion No. 0-6285
Re: Is it necessary for State
Aid Schools which have re
ceived and spent during the
1943-44 school term all of
their per capita payment
during said term, to include
in their 1944-45 school
year budget the $4.00 per
capita payment received and
spent in August, 1944?

Your recent communication to this Department
reads as follows:

"In August of 1944 the State Depart-
ment of Education of Texas paid $4.00 per capita
for each scholastic enumerated on the 1943-44
school census. This was in addition to the
$25.00 which had already been paid.

"In making out the school budgets in
State aid schools, heretofore all balances on
hand in both the state and county available fund
and the local maintenance fund were listed as
receipts and thus caused the school to receive
less state aid. As a result of this state aid
schools usually spent all balances before
September 1st for some improvement or some
needed equipment.

"This year the schools received this
additional $4.00 per capita before September 1st
and in order not to have this money listed as a
balance on September 1st, the state aid schools
of Lavaca County spent the money before Septem-
ber 1st.

"The State Department, however, is now

Hon. J. P. Holubec - Page 2

requiring all rural state aid schools to include the $4.00 per capita payment as receipts for the 1944-45 school year, although the money was received and spent during the 1943-44 school term. Is this legal?"

Section 1 of Art. 2 of H. B. 176, Ch. 373, 48th. Legislature, reads as follows:

"The trustees of the districts authorized to apply for aid under the provisions of this Act shall send to the State Superintendent of Public Instruction on forms provided by said authority, all information that may be required. Said forms will include a budget by which the amount of Salary Aid to which a school will be eligible shall be determined. The receipts as shown in said budget will include the State and County Available and local maintenance balances brought forward from the preceding year, State and County Available and Local Maintenance receipts for the current year, tuition to be collected locally, and miscellaneous receipts. The expenditure will include salaries of teachers as determined by the salary schedule stated herein, and a maximum of One Hundred Eighty Dollars ($180) per teacher per year in accredited schools and One Hundred Sixty Dollars ($160) per teacher per year in unaccredited schools for other current expenses; provided that if Salary Aid grant for the first year of the biennium exceeds or is less than the Salary Aid Allocation, the State Superintendent shall increase or decrease said maximums proportionately. The total amount of approved expenditures less the total amount of receipts will be the amount of Salary Aid to which a school will be eligible; provided in no case will such amount exceed the approved amount of teachers' salaries. The State Superintendent shall, subject to the provisions of this Act, grant to the school an amount of aid as will, with State and County Available Funds, together with all other funds including tuition,

Hon. J. F. Holubec - Page 3

maintain the school for such a period and in
such a manner as authorized in this Act. The
application shall be sworn to by the county
superintendent of all Common School Districts
and president and secretary of the Board of
trustees of all Independent School Districts
applying for aid. School districts accepting
aid under the provisions of this Act shall
share in the distribution of State and County
Available School Funds and in all other funds
as herein may be provided." (Emphasis ours)

By Section 2 of Article 3 of said H. B. 176,
the Legislature has provided a Salary Schedule and Length of
Term for schools to follow and maintain in order to receive
salary aid from the State.

A careful reading of Section 1 aforesaid re-
veals that State Aid Schools, for each school year of the
biennium covered thereby, were allowed maximum expenses,
which had to appear in the required budget. These expenses
were restricted to the salaries of teachers as authorized
in Section 2 of Article 3, plus a maximum of $180.00 per
teacher per year in accredited schools and $160.00 per teacher
per year in unaccredited schools for other current expenses.
The two school years covered by said H. B. 176 are those end-
ing August 31, 1944, and August 31, 1945. (Art. 13, Section
1 thereof). Therefore, the maximum amount authorized to be
spent per teacher per year for other current expenses than
salaries is $180.00 in accredited schools and $160.00 in
unaccredited schools. It follows that no school which received
equalization aid for the school year 1943-1944 was authorized
to spend more than said maximum amounts, subject to any in-
crease or decrease therein that may have been authorized for
said year by the State Superintendent under said Act.

The Equalization Aid grant for 1943-1944 was
based upon a per capita revenue of $25.00 from the State
Available School Fund. Therefore, the additional $4.00 per
capita apportioned the latter part of August, 1944, was not
authorized to be spent in 1943-1944 in Rural Aid schools. The
amounts represented by said August apportionment represent a
balance to be brought forward in the equalization budget for
1944-45 by any school applying for Rural Aid for said school
year.

Hon. J. P. Holubec - Page 4

It follows that the question submitted must be answered in the affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JAN 6 1945

ATTORNEY GENERAL OF TEXAS

By     L. H. Flewellen
            Assistant

LHF:BT

APPROVED
OPINION
COMMITTEE
BY